1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2024

SEAN F. McAVOY, CLERK

4

5

6

7     UNITED STATES DISTRICT COURT

8     EASTERN DISTRICT OF WASHINGTON

9

10   LEAH R. S. B.,

11                          Plaintiff,          NO:  1:22-CV-03095-LRS

12        v.
                                               ORDER REVERSING AND
13   MARTIN O'MALLEY,                          REMANDING COMMISSIONER'S
     COMMISSIONER OF SOCIAL                    DECISION
14   SECURITY,[1]

15                          Defendant.

16

17        BEFORE THE COURT are the parties' briefs.  ECF Nos. 10, 14.  This matter

18   was submitted for consideration without oral argument.  Plaintiff is represented by

19   [1] Martin O'Malley became the Commissioner of Social Security on December 20,

20   2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is

21   substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Lars J. Nelson.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court reverses the Commissioner's decision and remands the case.

## JURISDICTION

Plaintiff Leah R. S. B. [2] (Plaintiff), filed for disability insurance benefits (DIB) on January 16, 2015, Tr. 659-60, and for supplemental security income (SSI) on March 3, 2015.[3]  Tr. 349.  In both applications, she alleged an onset date of March 3, 2015.  Tr. 188-204.  Benefits were denied initially, Tr. 380-95, and upon reconsideration, Tr. 396-405.  Plaintiff appeared at hearings before an administrative law judge (ALJ) on July 18, 2017, and March 20, 2018.  Tr. 155-67.  On May 2, 2018, the ALJ issued an unfavorable decision, Tr. 346-72, and on May 6, 2019, the Appeals Council vacated the decision and remanded for additional proceedings.  Tr. 373-77.

---

[2] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  See Local Civil Rule 5.2(c).

[3] At the first hearing, the alleged onset date was amended to the SSI application date of March 3, 2015.  Tr. 171-72.  The ALJ found that the alleged onset date is after Plaintiff's date last insured and dismissed the Title II claim.  Tr. 42.

After three additional hearings on March 12, 2020, Tr. 155-67, September 10, 2020, Tr. 197-227, and March 2, 2021, Tr. 228-59, the ALJ issued a second unfavorable decision on April 29, 2021. Tr. 168-259. The Appeals Council denied review on June 22, 2021. Tr. 39-69. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in August 1975 and was 41 years old at the time of the first hearing. Tr. 120. She completed the ninth grade. Tr. 122. She has no recent work experience. Tr. 122-23. Plaintiff testified that she has an in-home care provider. Tr. 123-24. She testified that she cannot work because of fatigue, difficulties with concentration, diabetes, anxiety, and depression. Tr. 126-29. She testified that she has a brain tumor which causes headaches and sciatica which causes constant pain. Tr. 130-31. She has degenerative problems in her back, a heart condition, bipolar disorder, lupus, and neuropathy. Tr. 131-37. She is blind in her right eye. Tr. 146. Plaintiff testified she has arthritis and back pain. Tr. 179. She injured her left hand in 2018 and cannot move her left thumb or make a fist with her left hand. Tr. 180. She has frequent migraines and has to lay in a dark room nine to ten days a month. Tr. 181. She testified she has fibromyalgia. Tr. 185. Her lumbar back problems

affect her legs and back and her diabetic neuropathy causes numbness and burning. Tr. 250-51.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 3, 2015, the alleged onset date.  Tr. 46.  At step two, the ALJ

found that Plaintiff has the following severe impairments:  diabetes mellitus with peripheral neuropathy, degenerative disc disease of the lumbar spine, idiopathic cardiomyopathy, obesity, mild bilateral hip degenerative joint disease, chronic obstructive pulmonary disease (COPD), and left wrist pain status post-surgery.  Tr. 46.  At step three, the ALJ found that she does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 49.

The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> [T]he claimant can lift/carry 10 pounds occasionally and 5 pounds frequently; stand and/or walk 2 hours total in an 8 hour workday; sit for 6 hours in an 8 hour workday; occasionally climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; avoid concentrated exposure to respiratory irritants such as dust, fumes, odors and gases; frequent handling and fingering with the non-dominant left upper extremity; no work that requires depth perception; no work around hazards such as unprotected heights and dangerous machinery; no work that requires operation of a motor vehicle as part of the job duties; should avoid concentrated exposure to extremes of cold and heat; and avoid concentrated exposure to vibrations.

Tr. 50.

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 60. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as printed circuit board screener, optical assembler; and

document clerk.  Tr. 60-61.  Thus, the ALJ found Plaintiff has not been under a disability as defined in the Social Security Act from March 3, 2015, through the date of the decision.  Tr. 61.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.     Whether the ALJ properly evaluated the medical opinions;

2.     Whether the ALJ properly evaluated Plaintiff's symptom testimony;

3.     Whether the ALJ properly evaluated Plaintiff's severe impairments; and

4.     Whether evidence submitted to the Appeals Council is a basis for remand.

ECF No. 10.

## DISCUSSION

**A.     Medical Opinions**

Plaintiff argues the ALJ failed to properly evaluate the mental opinions of Nancy Winfrey, Ph.D., Nora Marks, Ph.D., Daniel McCabe, M.D., and Patricia Kraft, Ph.D.; and the physical opinions of Minh Vu, M.D., Steven S. Goldstein, M.D., and Benjamin Pate, PA-C.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[4]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

---

[4] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Plaintiff's claim was filed in March 2015, so the previous method of evaluating medical opinions applies.

(internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

   1. *Psychological/Psychiatric Opinions*

       a. **Nancy Winfrey, Ph.D.**

   Dr. Winfrey testified as the psychological expert at the hearing in September 2020.  Tr. 204-08.  She testified that she found no severe mental impairment supported by the record and that the durational requirement was not met in the records she reviewed.  Tr. 205-06.  She noted that in the records she reviewed, depression or anxiety were sometimes listed, but there was no assessment or treatment, which was not substantial enough for her to make a conclusion.  Tr. 207.  She testified about the diagnoses and exam findings in the June 2015 psychiatric evaluation completed by Gregory Sawyer, M.D.  Dr. Winfrey concluded that, "I would have to say that in light of the timeframe and that it was a consultative exam and that it was over five years ago, my finding would be that those are non-severe."  Tr. 205.

   The ALJ gave great weight to Dr. Winfrey's opinion.  Tr. 56.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d

1   1035, 1041 (9th Cir. 1995).  The ALJ found the opinion is consistent with the lack of

2   mental health treatment, including no psychiatric hospitalizations or other

3   decompensations, no treatment from a psychiatrist nor any psychotherapeutic

4   treatment, and no ongoing treatment after the alleged onset date.  Tr. 56.

5       Plaintiff argues the ALJ erred by giving great weight to Dr. Winfrey's opinion

6   and rejecting all other mental opinions because Dr. Winfrey did not review the entire

7   record.  ECF No. 10 at 21.  When the ALJ asked Dr. Winfrey whether she had the

8   opportunity to review Exhibit D1F through D40F (the entire medical record at that

9   time, Tr. 838-3240), Dr. Winfrey said, "Yes, but I didn't open every exhibit.  I

10  started to and it seemed mostly medical, so I tried to glean the mental health

11  information based on initially doing that and then reviewing the exhibits [that

12  seemed] like they were mental health. . . . The ones that I've reviewed closely were

13  13F, 12F and 15F; 4F is the same."[5]  Tr. 204.

14      Nonetheless, it is apparent from the decision that the ALJ reviewed the full

15  record.  It is the ALJ's responsibility to review all the medical evidence of record

16  and fashion the RFC, not the medical expert's.  20 C.F.R. § 416.946(c) ("[T]he

17  administrative law judge . . . is responsible for assessing your residual functional

18  capacity."); *see* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional

19

20  [5] Exhibit 4F, the June 2014 opinion of Nora Marks, Ph.D., is duplicated in Exhibit

21  15F.  Tr. 894-904, 1581-86.

capacity based on all the relevant evidence in your case record."); *see Gonzales v. Colvin*, No. EDCV 13-1421-JPR, 2014 WL 4656470, at *4–5 (C.D. Cal. Sept. 17, 2014) (finding ALJ's review of the entire record sufficient even when medical expert did not)*; Heiman v. Astrue,* No. EDCV 11–486(OP), 2011 WL 4829924, at *3–5 (C.D.Cal. Oct. 11, 2011) (finding lack of merit in the argument that medical opinions did not constitute substantial evidence because doctors did not have access to later records because "even if the ME and the State agency physicians did not have [the] records, the ALJ did."). There appears to be no requirement that a medical expert review every page of the record, and Plaintiff cites none.

However, Plaintiff also observes that Dr. Winfrey's testimony did not acknowledge Dr. McCabe's April 2016 report which is included in Exhibit 15F (Tr. 1593-96). ECF No. 10 at 21. Indeed, Dr. Winfrey's testimony did not mention Dr. McCabe's report or address its findings; in fact, she stated that Dr. Sawyer's June 2015 opinion was the "only relevant exhibit mental health-wise for this timeframe." Tr. 205. While it may not be necessary for a medical expert to review every record in every case, it is significant that in this case Dr. Winfrey did not mention Dr. McCabe's report, which is a relevant record and was included in the exhibits Dr. Winfrey said she closely reviewed. *See Vasquez v. Astrue*, No. 1:10-CV-01231-SKO, 2012 WL 947207, at *14 (E.D. Cal. Mar. 20, 2012) (finding the ALJ's RFC assessment was not supported by substantial evidence because certain medical records were not considered by the physicians upon whose opinions the ALJ relied);

*Salazar v. Astrue,* 2009 WL 2524874, at * 5 (C.D.Cal. Aug.17, 2009) (finding that ALJ's reliance on medical expert opinion who failed to review all the relevant records did not constitute substantial evidence); *see also* 20 C.F.R. § 416.945(a) (RFC is an assessment based upon all of the relevant evidence). Under these circumstances, Dr. Winfrey's opinion does not constitute substantial evidence. Since the ALJ significantly relied on Dr. Winfrey's opinion at step two and for the RFC finding, the matter must be remanded for further consideration and new testimony from a psychological expert.

Plaintiff additionally argues that Dr. Winfrey mistakenly stated that there was no ongoing mental health treatment, since the record shows Plaintiff was prescribed hydroxyzine for anxiety into 2020. ECF No. 10 at 21 (citing *e.g.*, Tr. 1902, 2027, 2159, 2203, 3245). The significance, if any, of these records as evidence of treatment is a matter for consideration by the medical expert and the ALJ on remand.

### b. Patricia Kraft, Ph.D.

In July 2015, Dr. Kraft, a state agency reviewing psychologist, found that Plaintiff has severe medically determinable impairments of anxiety disorders, affective disorders, substance addiction disorders, personality disorders, and intellectual disability. Tr. 266-67. For the "B" criteria, Dr. Kraft assessed mild restriction of activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. Tr. 267. Dr. Kraft's

RFC assessment indicates Plaintiff is capable of performing simple, routine tasks; is capable of performing a regular workday or work week with occasional interruptions due to psychological symptoms; and is capable of occasional superficial contact with coworkers and supervisors in the workplace, away from the public.  Tr. 272-73.

The ALJ gave little weight to Dr. Kraft's opinion because it is not consistent with other evidence in the record and cited records indicating essentially normal social functioning.  Tr. 59 (citing Tr. 736, 899, 1128, 1443).  The consistency of the medical opinion with the record as a whole is a relevant factor in weighing the medical opinion evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ found that Dr. Kraft's opinion is inconsistent with mental status exam findings indicating that Plaintiff was generally friendly and cooperative, Tr. 899, 1443; that outside of one instance of domestic violence, she had no difficulties getting along with others, Tr. 736; that she was seeing people socially, Tr. 1128; and she had never been fired or laid off from work based on difficulties getting along with others, Tr. 736.  Tr. 58. These may be specific, legitimate reasons supported by substantial evidence for the weight assigned to the opinion.  However, since this matter is remanded for additional testimony from a psychological expert, this finding should be reconsidered on remand.

In addition, Plaintiff argues the ALJ did not fully reject Dr. Kraft's opinion because the ALJ did not specifically reject Dr. Kraft's assessment that Plaintiff

would have "occasional interruptions due to psychological symptoms." ECF No. 10 at 20-21; Tr. 59. Plaintiff contends that "occasional interruptions" invokes the vocational definition of the word "occasional," meaning interruptions up to 1/3 of the regular workday or work week, which would potentially be a disabling limitation. ECF No. 10 at 20-21; Tr. 195, 272; *see* POMS DI 25001.001. Defendant does not dispute that the ALJ did not address the limitation of "occasional interruptions due to psychological symptoms," but essentially argues the plain language of Dr. Kraft's opinion indicates that Plaintiff was capable of performing a regular workday or workweek, despite occasional psychological symptoms. ECF No. 14 at 19. The "occasional interruptions" limitation assessed by Dr. Kraft should be addressed on remand.

### c. Daniel McCabe, M.D.

In April 2016, Dr. McCabe examined Plaintiff and completed a psychological/psychiatric evaluation. Tr. 1593-96. Dr. McCabe diagnosed PTSD and a history of diagnosis of bipolar disorder. Tr. 1595. Dr. McCabe opined that Plaintiff has marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in the ability to adapt to changes in a routine work setting; in the ability to ask simple questions or request assistance; and in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms. Tr. 1595.

He rated the overall severity of Plaintiff's ability based on the combined impact of all diagnosed mental impairments as "marked." Tr. 1595.

The ALJ gave Dr. McCabe's opinion little weight. Tr. 58. First, the ALJ found that the opinion is "somewhat internally inconsistent." Tr. 58. A discrepancy between a provider's clinical notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ noted that while Dr. McCabe assessed multiple marked mental limitations, he also indicated that Plaintiff's psychiatric issues are not what keeps her from working. Tr. 58. Indeed, Dr. McCabe stated, "the main reason she is unable to work is due to her severe medical problems" and "I do believe she struggles psychiatrically but I don't believe that this is what keeps her from being able to work." Tr. 1596. Additionally, Dr. McCabe's "clinical findings" indicate that the mental health symptoms affecting Plaintiff's ability to work are "None." Tr. 1595. This is substantial evidence which supports the ALJ's reasoning.

Second, the ALJ found that Dr. McCabe's opinion is inconsistent with the overall medical evidence of record and the record of conservative treatment. Tr. 58. The consistency of the medical opinion with the record as a whole is a relevant factor in weighing the medical opinion evidence. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ found that Plaintiff's psychiatric treatment was routine and conservative, there is an absence of psychiatric hospitalizations and medication in the record, and mixed mental status exam results with some memory,

concentration, and fund of knowledge deficits.  Tr. 58.  The ALJ also found Dr.

McCabe's opinion is inconsistent with mental status exam findings indicating that

Plaintiff was generally friendly and cooperative, Tr. 899, 1443; that outside of one

instance of domestic violence, she had no difficulties getting along with others, Tr.

736; that she was seeing people socially, Tr. 1128; and she had never been fired or

laid off from work based on difficulties getting along with others, Tr. 736.  Tr. 58.

These may be specific, legitimate reasons supported by substantial evidence for the

weight assigned to the opinion.  However, since this matter is remanded for

additional testimony from a psychological expert, this finding should be

reconsidered on remand.

Plaintiff argues the ALJ did not consider barriers to treatment, did not

properly assess the objective evidence, and improperly considered the lack of

psychiatric hospitalization.  ECF No. 10 at 19.  On remand, the overall mental health

record should be reconsidered, including the opinion of Dr. McCabe.

### d.  Nora Marks, Ph.D.

In June 2014, Dr. Marks examined Plaintiff and completed a DSHS

Psychological/Psychiatric Evaluation form.  Tr. 1581-86.  Dr. Marks diagnosed

anxiety disorder NOS, depressive disorder NOS, cannabis dependence,

polysubstance dependence in remission, reading disorder NOS by history,

personality disorder NOS, and borderline intellectual functioning.  Tr. 1584.  She

assessed marked limitations in the ability to understand, remember and persist in

tasks by following detailed instructions; in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in the ability to communicate and perform effectively in a work setting, in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms, and in the ability to maintain appropriate behavior in a work setting.  Tr. 1584-85.  Dr. Marks also assessed a severe limitation in the ability to set realistic goals and plan independently.  Tr. 1585.

The ALJ gave little weight to Dr. Marks' opinion.  Tr. 58.  The ALJ gave the same reasons with the same citations that were given for rejecting the opinions of Dr. McCabe.  Tr. 58.  For the same reasons, Dr. Marks' opinion should be reconsidered on remand.

### 2.  Physical Opinions

#### a.  Minh Vu, M.D.

Dr. Vu testified as a medical expert at the hearing in September 2020 and identified the following impairments in the record:  cardiomyopathy with a normal ejection fraction in the most recent testing, COPD, liver disease with no varices or ascites, renal disease, and obesity.  Tr. 208-25.  He opined Plaintiff was limited to carrying 20 pounds occasionally and 10 pounds frequently; could stand and walk six hours a day; could not climb ropes, ladders, or scaffolds; should avoid unprotected heights and moving equipment; and exposure to fumes should be restricted.  Tr. 211.

1  Dr. Vu opined use of Plaintiff's left upper extremity for lifting and touching is

2  limited to occasional.  Tr. 222.

3      The ALJ gave little weight to Dr. Vu's opinion.  Tr. 56.  First, the ALJ found

4  that the overall medical evidence supports greater limitations in standing and

5  walking and in postural and environmental constraints.  Tr. 56.  Plaintiff does not

6  challenge this portion of the ALJ's finding regarding Dr. Vu's opinion.

7      Second, the ALJ gave little weight to Dr. Vu's opinion that Plaintiff could

8  only occasionally use her left upper extremity.  Tr. 56.  The ALJ found the limitation

9  is inconsistent with notes showing only mild thenar atrophy, Tr. 2152, and the most

10  recent treatment notes (not reviewed by Dr. Vu) showing Plaintiff's hand had

11  improved with increased range of motion, Tr. 3309.  Tr. 56.

12      As Plaintiff observes, the ALJ's interpretation of "mild thenar atrophy" as

13  inconsistent with a hand limitation is not supported by the record cited.  ECF No. 10

14  at 16.  The October 2019 orthopedic record indicates had pain in the dorsal wrist and

15  triggering of the fourth finger with numbness of her hand.  Tr. 2152.  On exam, there

16  was mild thenar atrophy, pain with Finklesteins test, good range of motion,

17  decreased grip strength, and positive Phalen's.  Tr. 2152.  The assessment was left

18  de Quervain tenosynovitis, left fourth trigger finger, left wrist degenerative joint

19  disease, and left and right carpal tunnel syndrome.  Tr. 2152.  She was scheduled for

20  surgery.  Tr. 2153.  There appears to be no basis for the ALJ's conclusion that "mild

21  thenar atrophy" is inconsistent with Dr. Vu's opinion.  It is improper for an ALJ to

act as his own medical expert, substituting his opinion for the opinion of a medical doctor. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (noting that as a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; she is "simply not qualified to interpret raw medical data in functional terms.").

Similarly, the ALJ's citation to an October 2020 record in which Plaintiff reported that her hand was "doing better, improved ROM, still painful into wrist" is insufficient to contradict Dr. Vu's opinion regarding the left extremity limitation. Tr. 3309. As Defendant observes, the opinion of the other medical expert, Dr. Goldstein, differs from Dr. Vu's opinion on this issue. ECF No. 14 at 15. However, the ALJ did not discuss any conflict in the opinions and the Court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). On remand, the ALJ shall reconsider Dr. Vu's testimony, particularly with respect to any hand limitation.

### b. *Steven S. Goldstein, M.D.*

In March 2021, Dr. Goldstein testified at the last hearing and opined that the combination of uncontrolled diabetes, congestive heart failure to some degree, obesity, and problems with the cervical and lumbar spine indicates a limitation to sedentary work. Tr. 234. He opined that Plaintiff would be limited to up to two

hours of standing and walking and up to six hours of sitting, lifting no more than 10

pounds occasionally and five pounds frequently, no climbing ladders, ropes or

scaffolds, all other postural activities are limited to occasional, avoid concentrated

pulmonary irritants and avoid smoking.  Tr. 236-37.  Dr. Goldstein also assessed a

limitation of frequent use of the left hand.  Tr. 237-38.

The ALJ gave great weight to Dr. Goldstein's opinion, finding it consistent

with other evidence in the record.  Tr. 57.  Plaintiff does not challenge this finding;

instead, Plaintiff essentially contends the ALJ failed to credit all of Dr. Goldstein's

opinion, which Plaintiff argues includes the need to elevate the legs two to three

times per day for 30 minutes at a time and an impact on concentration.  ECF No. 10

at 17-18.

First, it is clear from the context of Dr. Goldstein's testimony that he did not

assess a limitation of the need to elevate the legs two to three times during the

workday.  Tr.  242-44.  He testified that it was "reasonable to follow the plan the

doctor said" to relieve edema, which was to elevate the legs two to three times a day.

Tr. 242.  Dr. Goldstein testified that this could be accomplished at lunch and after

work, or an alternative would be to wear compression stockings.  Tr. 242.   The ALJ

did not err by not including this as a limitation.  *See Valentine v. Comm'r of Social

Security Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009) (upholding ALJ's omission

of doctor's recommendation from the RFC because it was "neither a diagnosis nor a

statement of [the plaintiff's] functional capacity" and finding that it was "rather a recommended way for [the plaintiff] to cope with his PTSD symptoms").

Second, Dr. Goldstein testified that pain and numbness from neuropathy "would affect her ability to concentrate" but he "can't tell from this record" how Plaintiff was affected. Tr. 244. Dr. Goldstein's testimony does not establish a limitation on concentration as he was unable to quantify any impact on Plaintiff's ability to concentrate. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (holding ALJ reasonably determined opinion was vague because it failed to specify a claimant's functional limits and was thereby "inadequate for determining RFC"). As Defendant observes, the ALJ evaluated Plaintiff's ability to concentrate based on the psychological evidence in the record which, as *supra*, will be reconsidered on remand. ECF No. 14 at 16.

### c.  Benjamin Pate, PA-C

For claims filed before March 27, 2017, the opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than an opinion from a source who is not an acceptable medical source or who is a non-medical source. 20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).[6] For purposes of this claim, a physician assistant is not an acceptable

---

[6] Effective March 27, 2017, the definition of acceptable medical source includes licensed physician assistants. 20 C.F.R. § 416.902(a)(8) (2017).

ORDER - 23

medical source.  20 C.F.R. § 416.913(d) (2013).  The ALJ is required to consider

evidence from non-acceptable medical sources, 20 C.F.R. § 416.927(f), but may

discount testimony from these sources if the ALJ "gives reasons germane to each

witness for doing so."  *Molina*, 674 F.3d at 1104.

In June 2014, Mr. Pate completed a DSHS Physical Evaluation form and

noted diagnoses of cardiomyopathy, bipolar disorder, hypothyroidism, frozen

shoulder, fibromyalgia, and diabetes.  Tr. 1579-80.  He assessed Plaintiff as limited

to sedentary work and assessed severity ratings of five to seven out of 10 in every

category of basic work activities except hearing.  Tr. 1579-80.

In April 2016, Mr. Pate completed a second DSHS Physical Functional

Evaluation form and noted diagnoses of diabetes, angina pectoris/coronary artery

disease, COPD, SVT (supraventricular tachycardia), gastroesophageal reflux

disease, and arthritis.  Tr. 1588-92.  He assessed a severity rating of five for every

diagnosis, meaning an inability to perform any basic work-related activities.  Tr.

1589.  He assessed Plaintiff as severely limited and unable to meet the demands of

sedentary work.  Tr. 1590.

The ALJ gave Mr. Pate's assessments little weight.  Tr. 57.  First, the ALJ

found that the assessments are not consistent with the overall medical evidence.  Tr.

57-58.  A medical opinion may be rejected if it is unsupported by medical findings.

*Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195

(9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*

*v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ referenced lumbar spine and hip imaging showing no herniations and mild degenerative joint disease; mostly unremarkable physical exam results; normal left ejection fraction and no cardiac etiology for plaintiff's symptoms, and less than morbid obesity. Tr. 58.

Second, the ALJ found the assessments are inconsistent with Plaintiff's activities. Tr. 58. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ observed that treatment notes demonstrate that Plaintiff walked her dog four blocks daily, was doing some gardening, and "all her usual chores." Tr. 58.

Plaintiff argues the ALJ's reasoning is insufficiently specific, noting the ALJ did not provide citations to the record, did not explain how the objective findings are inconsistent with Mr. Pate's opinions, and did not explain how the cited activities are inconsistent with the limitations assessed. ECF No. 10 at 15. Since this matter is remanded on other grounds, and since the medical evidence must be reconsidered, the ALJ should revisit Mr. Pate's opinion and explain with specificity the reasons for the weight assigned to the opinion.

**B.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly assess her symptom testimony. ECF No. 10 at 9-14. An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible. "First, the

ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).

    The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 52.

    The ALJ's evaluation of Plaintiff's symptom claims, and the resulting

limitations relies almost entirely on the ALJ's assessment of the medical evidence.

Having determined a remand is necessary to readdress the medical and

psychological source opinions, any reevaluation must necessarily entail a

reassessment of Plaintiff's subjective symptom claims.  Thus, the Court does not

reach this issue.  On remand the ALJ must also carefully reevaluate Plaintiff's

symptom claims in the context of the entire record. *See Hiler v. Astrue*, 687 F.3d

1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [the plaintiff's] alternative ground for remand.").

**C.    Step Two**

Plaintiff contends the ALJ should have included fibromyalgia, upper extremity disorders, and mental health disorders as severe impairments.  ECF No. 10 at 4-9.  At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source.  20 C.F.R. § 416.921.  A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment.  *Id*.  After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  However, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See* e.g., *Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Step two is not meant to identify the impairments that should be considered when determining the RFC.  *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).  In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not

'severe.'" Social Security Ruling (S.S.R.) 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Thus, the ALJ must consider the effect of all impairments, including medically determinable but non-severe impairments, in evaluating the RFC.  20 C.F.R. § 416.945(a)(2).

### 1. *Fibromyalgia*

Plaintiff argues the ALJ should have assessed fibromyalgia as a medically determinable and severe impairment.  ECF No. 10 at 4.  The ALJ did not assess fibromyalgia or discuss it as a potential medically determinable impairment.  Tr. 46-49.  In support of her contention that fibromyalgia is a severe impairment, Plaintiff cites a 2004 record from Dr. Sagar, a rheumatologist, finding chronic pain syndrome with features of fibromyalgia (and other issues), and a February 2015 record from Dr. Sagar assessing fibromyalgia.  Tr. 1062, 1067.  Plaintiff then cites numerous office visit notes from throughout the record, including some from before Plaintiff's alleged onset date, indicating symptoms consistent with fibromyalgia, such as pain in the spine, hips, arms, legs, fatigue, memory issues, depression, anxiety, etc.  ECF No. 10 at 4 (numerous citations).  According to Plaintiff, the ALJ should have found fibromyalgia to be a medically determinable impairment and considered Plaintiff's symptoms from fibromyalgia in evaluating the RFC.  ECF No. 10 at 5.

Social Security Ruling (SSR) 12-2p indicates that fibromyalgia is a medically determinable impairment when it is established by appropriate medical evidence.  2012 WL 3104869 (effective July 25, 2012).  Fibromyalgia may be established

based on the 1990 America College of Rheumatology (ACR) Criteria or the 2010

ACR Preliminary Diagnostic Criteria.  *Id.*  Plaintiff asserts she meets the 2010 ACR

criteria which requires evidence from an acceptable medical source who reviewed

the person's medical history and conducted a physical exam documenting: (1) a

history of widespread pain; (2) repeated manifestations of six or more fibromyalgia

symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders

that could cause these repeated manifestations of symptoms, signs, or co-occurring

conditions were excluded, such as blood counts, erythrocyte sedimentation rate, anti-

nuclear antibody, thyroid function, and rheumatoid factor.  *Id.*  Since this matter is

remanded on other grounds, the ALJ should consider the fibromyalgia evidence and

make an appropriate step two finding.

### 2.  Upper Extremity Disorders

First, Plaintiff argues the ALJ erred by finding a severe impairment of "left

wrist pain status post surgery" because the record does not reflect surgery occurred.

ECF No. 10 at 6; Tr. 46.  In February 2020, Plaintiff was scheduled for surgery on

her left hand, Tr. 2768, but there is no record that surgery occurred.

Notwithstanding the ALJ's error in referencing "status post surgery," the ALJ

considered the evidence of left hand impairment and, based on the record and the

opinion of the medical expert, Dr. Goldstein, concluded that Plaintiff is limited to

frequent use of the left upper extremity.  Tr. 50, 55-57.  Defendant argues the "status

post surgery" finding is simply a "scrivener's error" and therefor harmless, ECF No.

14 at 5, but since the matter is remanded on other grounds, the ALJ should reconsider the step two finding regarding Plaintiff's left hand impairment.

Second, Plaintiff argues the ALJ erred by not considering Plaintiff's right hand or shoulder disorders.  In support, Plaintiff primarily cites records from 2011-2014, before the alleged onset date.  ECF No. 10 at 6-7 (citing Tr. 903, 919, 920, 1037, 1220, 1569, 2944).  The only record cited by Plaintiff from after the alleged onset date is a 2019 record indicating an EMG/NCV revealed "bilateral median neuropathy at the wrist."  Tr. 2152.  Notably, at that visit, Plaintiff complained only of left hand pain, only the left hand was examined, and the doctor's assessment pertained only to the left hand.  Tr. 2152-53.  Furthermore, the ALJ considered the indication of bilateral median neuropathy of the wrist in evaluating Plaintiff's hand impairment.  Tr. 55 (citing Tr. 2152).  Plaintiff has not established that the ALJ erred at step two with regard to right hand or shoulder disorders.

### 3. Mental Health Disorder

Plaintiff argues the ALJ should have found her depression/mood disorder is a severe impairment.  ECF No. 10 at 7-8.  Because the ALJ relied on Dr. Winfrey's testimony in making the step two finding, and because the entire record was not adequately addressed by Dr. Winfrey, the ALJ should reconsider Plaintiff's depression/mood disorder at step two.

**D.    Evidence Submitted to the Appeals Council**

Plaintiff contends evidence submitted to the Appeal Council constitutes additional grounds for remand. ECF No. 10 at 21-22. The Court need not reach the merits of this issue since the matter is remanded on other grounds. The evidence submitted to the Appeals Council shall be considered by the ALJ as part of the record on remand.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Plaintiff requests remand for additional proceedings, ECF No. 10 at 22, and the Court finds remand for additional proceedings is the appropriate remedy. Accordingly,

1. Plaintiff's Brief, ECF No. 10, is GRANTED.

2. Defendant's Brief, ECF No. 14, is DENIED.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 20, 2024.

LONNY R. SUKO
Senior United States District Judge